**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SORAYA ROSS, individually and on behalf of all others similarly situated, | No. C-12-1645 EMC |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| v. | |
| SIOUX HONEY ASSOCIATION, COOPERATIVE, | **(Docket No. 49)** |
| Defendant. | |
| _____/ | |

## I.   INTRODUCTION

Plaintiff Soraya Ross ("Ross") has filed a class action lawsuit against Defendant Sioux Honey Association, Cooperative ("Sioux Honey"), alleging that it violated federal and state law by marketing its "Sue Bee Clover Honey" ("Sue Bee Honey") in California as "Honey," despite the fact that it did not contain pollen.  Plaintiff argues that Sioux Honey's act of filtering out all naturally occurring pollen from Sue Bee Clover Honey requires it to label the product in such a way that clearly discloses to the consumer that all pollen has been removed (*e.g.* by denominating it as "Honey - Contains No Pollen," or "Honey - No Pollen"), instead of simply as "honey."  *See* Third Amended Complaint ("TAC") (Docket No. 42) ¶¶ 5, 40, 46.  Since it was marketed and sold simply as 'honey,' and not with a disclosure indicating the absence of pollen, Plaintiff argues that Sue Bee Honey's label did not bear the "common or ususal name" appropriate to that product as required under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et. seq.*

United States District Court

For the Northern District of California

Plaintiff alleges that she and other similarly situated California consumers were misled into purchasing Sue Bee Honey even though "[a] valuable constituent, pollen, was removed," and that they would not have purchased the product had they known it "did not contain any pollen."  TAC ¶¶ 77, 79.  Consequently, Plaintiff argues that she and her proposed class suffered "economic losses" insofar as they received a product whose value was "less than what they paid."  TAC ¶¶ 80, 117. Ross's suit advances causes of action for purported violations of California's Consumers Legal Remedies Act, Unfair Competition Law, and False Advertising Law, as well as under California's common law doctrines of unjust enrichment or restitution and implied contract.  TAC ¶¶ 67-125.

Sioux Honey has filed a motion to dismiss the complaint, arguing, *inter alia*, that the Plaintiff and potential class members lack standing to sue based on the facts alleged in the complaint, that claims asserted by Ross are preempted by federal food and drug laws, and that Plaintiff's causes of action fail to state a claim under Fed. R. Civ. P. 12(b)(6).  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Defendant's motion to dismiss for the reasons discussed herein.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff alleges the following facts in her Third Amended Complaint.  On March 4, 2012, Soraya Ross bought a bottle of Sue Bee Clover Honey ("Sue Bee Honey") at a store in Santa Monica, California.  TAC ¶ 6.  She states that she "relied upon the representation that the Sue Bee honey was 'honey'" in making her decision to purchase the product.  *Id.* ¶ 6.  Though not explicitly stated, Plaintiff's amended complaint implies that she understood the label "honey" to refer to a product that included pollen.  *See e.g.* TAC ¶ 42 (". . . failing to disclose that Sue Bee Honey does not contain pollen and/or misrepresenting the Sue Bee Honey as "honey," when it is in fact honey containing no pollen . . . ").[1]  At some point after her purchase, Ross learned or had reason to believe that all naturally occurring pollen had been filtered out of the bottle of Sue Bee Clover Honey.  Her

---

[1]  Counsel for Plaintiff confirmed at the hearing on Defendant's motion that the amended complaint alleges reasonable consumers, including Plaintiff, expect a product denominated as "honey" to include pollen.  *See* Hearing Transcript (Docket No. 61) at 8:17-21 ("Ms. Tufaro:  I think that, again, even with the omission that the statement "honey" itself implies that it's pure, that it contains the constituents that are supposed to be in honey.  Pollen is the heart and soul of honey. Why would anybody think anything else?").

attorneys tested the bottle of honey, as well as "various bottles of Sue Bee Honey from various regions of California, as well as from other states," and confirmed that "none of the Sue Bee Honey bottles tested, including the bottle purchased by Plaintiff, contained any pollen." *Id.* ¶ 7. She alleges that Defendant Sioux Honey Association, Cooperative ("Sioux"), admits to removing all pollen from Sue Bee Honey during the manufacturing process. *Id.* ¶32.

Ross's complaint lists many of the purported health benefits of consuming bee pollen. *See* TAC ¶¶ 17, 20-22. She alleges that "[f]iltering honey to remove all pollen materially changes the composition of the honey, eliminating several of the essential properties that make it honey and destroying most of the honey's nutritional value." *Id.* ¶ 18. She also alleges that "[t]he absence of pollen from honey is material to consumer acceptance because pollen is the most nutritious component of honey," *id.* ¶ 18, and that Sioux is aware that "consumers purchase honey for table use for its perceived nutritional and health benefits," *id.* ¶ 19.

Ross argues that both federal and state law impose a duty on Sioux Honey to disclose the fact that all pollen had been removed from Sue Bee Honey. TAC ¶¶ 34-52. Sioux Honey, however, made no such disclosure, which Plaintiff alleges concealed a fact about the product "material to both consumer acceptance and price." *Id.* ¶¶ 39, 42, 75, 78, 96. Defendant's omission allegedly misled "reasonable consumers, including Plaintiff, . . . into believing that Sue Bee Honey was 'pure honey' as opposed to highly processed, pollenless honey that was stripped of its nutritional value." *Id.* ¶ 104. Consequently, Sioux Honey was able to charge a "price premium" for the non-pollen containing product. *Id.* ¶¶ 42, 58, 112. "Had Plaintiff and members of the Class known the Sue Bee Honey did not contain any pollen, Plaintiff and members of the Class would not have purchased the Sue Bee Honey." *Id.* ¶ 56. Plaintiff, therefore, alleges that she and similarly situated California consumers "suffered economic losses" that are "directly traceable to the action of Defendant," ranging from "the amount of the entire purchase price that they paid in exchange for the misbranded Sue Bee Honey" to the price differential between what they paid and the purportedly lower true market value of the product. *Id.* ¶¶ 57, 59, 80, 98, 116-17.

On April 2, 2012, Ross filed a class action lawsuit against Sioux Honey in federal court "on her own behalf and on behalf of any person who purchased a bottle of Sue Bee Honey from any

United States District Court

For the Northern District of California

1  store located in California at any time from April 2, 2008 through the present," claiming jurisdiction

2  under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332.  TAC ¶¶ 9, 60.  This Court related

3  Ross's suit to a similar class action, *Brod v. Sioux Honey Association*, C-12-1322, by an order dated

4  April 25, 2012. *See* Order Relating Case (Docket No. 8).   Since then Defendant has filed two

5  motions to dismiss, *see* Docket Nos. 11, 28, and Plaintiff has twice amended her complaint, *see*

6  Docket Nos. 13, 20.  After a hearing on a motion to dismiss in the related *Brod* matter, Plaintiff

7  requested leave to file a Third Amended Complaint, which this Court granted.  *See* Docket No. 41.

8        The Third Amended Complaint advances the following five causes of action:

9        (1)      That Defendant's marketing and sale of Sue Bee Clover Honey in California as

10  "honey" violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et.*

11  *seq*., because the product was mislabeled and misrepresented material facts about its quality,

12  characteristics, and ingredients.  *See* TAC ¶¶ 67-85.

13        (2)      That Defendant's marketing and sale of Sue Bee Clover Honey in California as

14  "honey" violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et.*

15  *seq*., because the product's mislabeling constituted an "unlawful, unfair, fraudulent, or

16  deceptive business act or practice."  *See* TAC ¶¶ 86-100.

17        (3)      That Defendant's marketing and sale of Sue Bee Clover Honey in California as

18  "honey" violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et.*

19  *seq*., in that by failing to label the product as "'Honey – Contains No Pollen' or 'Honey – No

20  Pollen,' or 'Honey Does Not Contain Pollen,'" Sioux Honey misled reasonable consumers

21  into believing that Sue Bee Honey was "pure honey" and not "pollenless honey."  *See* TAC

22  ¶¶ 101-108.

23        (4)      That Defendant's marketing and sale of Sue Bee Clover Honey in California as

24  "honey" violated "California's common law doctrine of unjust enrichment/restitution"

25  because Sioux Honey unjustly and inequitably "accepted or retained the benefits conferred

26  by Plaintiff and other similarly situated Class members despite Defendant's knowledge of its

27  material misrepresentations and omissions of material fact" that resulted from the

28  mislabeling of its product.  *See* TAC ¶¶ 109-117.

(5)     That Defendant's marketing and sale of Sue Bee Clover Honey in California as "honey" violated "California's common law doctrine of breach of implied contract" because Sioux Honey "accepted or retained the benefits conferred by Plaintiff and other similarly situated Class members despite Defendant's knowledge of its material misrepresentations and omissions of material fact" that resulted from the mislabeling of its product.  *See* TAC ¶¶ 118-125.

Plaintiff seeks "a permanent injunction or other appropriate equitable relief requiring Defendant to refrain from marketing its Sue Bee Honey as simply 'honey' to consumers in the State of California," an order requiring "Defendant to pay Plaintiff and other members of the Class an amount of actual and statutory damages, restitution and punitive damages in an amount to be determined at trial," and "reasonable costs and attorneys' fees."  TAC at 21.

Sioux Honey filed the now pending Motion to Dismiss on October 9, 2012.  Def.'s Mot. to Dismiss (Docket No. 49).  It argues, among other things, that Ross and similarly situated members of the proposed class lack standing to sue under Article III of the U.S. Constitution, that federal food and drug laws preempt all of Ross's state law based causes of action, and that Plaintiff's causes of action otherwise fail to state a claim under Fed. R. Civ. P 12(b)(6).

## III.     DISCUSSION

A.     Constitutional Standing

Sioux Honey's Motion to Dismiss asks this Court to dismiss Ross's class action complaint under Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction.  In its motion, Sioux Honey argues that Ross and other similarly situated class members do not have "the required injury-in-fact" to assert standing for their claims "under Article III of the United States Constitution."  Def.'s Mot. to Dismiss at 5.  Under Rule 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff cannot satisfy the standing requirements set by Article III of the U.S. Constitution.  *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010).  "Because standing...[pertains] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule 12(b)(1) motion to dismiss."  *Chandler,* 598 F.3d at 1121–22.  "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic

1    evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Here,

2    Sioux Honey asserts only a facial challenge; therefore, the Court must accept all allegations of fact

3    in the complaint as true. *See Warren*, 328 F.3d at 1139 ("Where jurisdiction is intertwined with the

4    merits, we must assume the truth of the allegations in a complaint unless controverted by undisputed

5    facts in the record.") (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987)) (internal

6    quotation marks omitted).

      1.    <u>Legal Standard</u>

8          "Article III of the Constitution limits the 'judicial power' of the United States to the

9    resolution of 'cases' and 'controversies.'" *Valley Forge Christian College v. Americans United for*

10   *Separation of Church & State, Inc.,* 454 U.S. 464, 471 (1982).

> To satisfy the "case" or "controversy" requirement of Article III,
> which is the "irreducible constitutional minimum" of standing, a
> plaintiff must, generally speaking, demonstrate that he has suffered
> "injury in fact," that the injury is "fairly traceable" to the actions of the
> defendant, and that the injury will likely be redressed by a favorable
> decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112
> S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Valley Forge Christian College
> v. Americans United for Separation of Church and State, Inc.,* 454
> U.S. 464, 471–72, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).

16   *Bennett v. Spear,* 520 U.S. 154, 162 (1997). Although evidence is to be viewed and inferences are

17   to be drawn in Plaintiff's favor (as the nonmoving party), Plaintiff has the burden of proving that she

18   has standing to sue under Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)

19   (stating that "[t]he party invoking federal jurisdiction bears the burden of establishing [the] elements

20   [of constitutional standing]"); *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1137 (10th

21   Cir. 2006) (noting that "[t]he burden to establish prudential standing is on the plaintiff bringing the

22   action").

      2.    <u>Injury-In-Fact</u>

24         This Court has already considered and rejected a very similar standing argument advanced

25   by Sioux Honey in the related *Brod* case. *See* Order Granting Defendant's Motion to Dismiss

26   (Docket No. 52) in *Brod v. Sioux Honey Association*, C-12-1322 EMC, 2012 WL 3987516 (N.D.

27   Cal. Sept. 11, 2012). Here, as in *Brod*, Plaintiff's claims against Sioux Honey stem *solely* from the

28   fact that it labels and markets its Sue Bee Clover Honey in California stores as "honey," despite the

United States District Court

For the Northern District of California

1  fact that all naturally occurring pollen has been filtered or otherwise removed from the product.

2  TAC ¶ 5.  Sioux Honey does not seem to contest Plaintiff's allegation that it removes pollen from

3  Sue Bee Clover Honey.  *See e.g.* Def.'s Mot. to Dismiss at 8 ("Honey is a single-ingredient food:

4  SHA [Sioux Honey] does not 'fabricate' it from multiple ingredients.  Bees make honey and SHA

5  merely filters out the impurities.").

6      In her complaint, Ross argues that section 343(i)(1) of the Federal Food, Drug, and Cosmetic

7  Act, 21 U.S.C. § 343(i)(1), and its implementing regulations codified at 21 C.F.R. § 102.5, require

8  Sioux Honey to market Sue Bee Honey with a label clearly indicating that all pollen has been

9  removed from the product, such as by denominating it as "'Honey – Contains No Pollen' or 'Honey

10  – No Pollen,' or 'Honey Does Not Contain Pollen,'" instead of simply as "honey."  TAC ¶ 40.   As a

11  result of Sioux Honey's marketing and labeling of Sue Bee Clover Honey as "honey" even though

12  all pollen had been filtered out, Ross claims that she and other members of the prospective class

13  were either misled into purchasing the product, or were misled about an essential characteristic of

14  the product.  As described above, by failing to disclose the absence of pollen in Sue Bee Honey,

15  Ross argues that Defendant concealed a fact about the product that was "material to both consumer

16  acceptance and price."  TAC ¶¶ 39, 42, 75, 78, 96; *see also id.* ¶ 104 (Defendant's omission

17  allegedly misled "reasonable consumers, including Plaintiff, . . . into believing that Sue Bee Honey

18  was 'pure honey' as opposed to highly processed, pollenless honey that was stripped of its

19  nutritional value.").  Consequently, Sioux Honey was able to charge a "price premium" for the non-

20  pollen containing product.  *Id.* ¶¶ 42, 58, 112.  "Had Plaintiff and members of the Class known the

21  Sue Bee Honey did not contain any pollen, Plaintiff and members of the Class would not have

22  purchased the Sue Bee Honey."  *Id.* ¶ 56.  Plaintiff alleges that she and similarly situated California

23  consumers "suffered economic losses" that are "directly traceable to the action of Defendant,"

24  ranging from "the amount of the entire purchase price that they paid in exchange for the misbranded

25  Sue Bee Honey" to the price differential between what they paid and the purportedly lower true

26  market value of the product.  *Id.* ¶¶ 57, 59, 80, 98, 116-17.

27      Defendant does not challenge, and, indeed, Plaintiff's complaint seems to satisfy, those

28  elements of standing that require "a causal connection between the injury and the conduct

United States District Court

For the Northern District of California

1  complained of" that is "fairly traceable to the challenged action of the defendant," and the likelihood

2  that Plaintiff's "injury will be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. at 167.

3  Rather, Defendant's standing challenge focuses on Plaintiff's ability to demonstrate an "injury-in-

4  fact." *See* Def.'s Mot. to Dismiss at 6 ("These allegations do not show an injury-in-fact."). Just as

5  this Court found in its Order Granting Defendant's Motion to Dismiss in *Brod v. Sioux Honey*

6  *Association*, Ross's complaint and allegation of "economic injury" satisfy the injury-in-fact

7  requirement for Article III standing.

8          This Court's Order in *Brod* analyzed the California Supreme Court's holding in *Kwikset*

9  *Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), in which the Supreme Court found that a plaintiff

10  had standing to bring a suit alleging that "Kwikset falsely marketed and sold locksets labeled as

11  'Made in U.S.A.' that in fact contained foreign-made parts or involved foreign manufacture,"

12  allegedly in violation of state unfair competition and false advertising laws.[2] *Kwikset Corp.*, 51 Cal.

13  4th at 317. The Supreme Court analogized the *Kwikset* plaintiff's complaint to one "based on a

14  fraud theory involving false advertising and misrepresentations to consumers." *Id*. at 326. In such

15  cases, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-

16  producing conduct," which meant that the plaintiff in *Kwikset* had to "allege economic injury arising

17  from reliance on Kwikset's misrepresentations" in order to establish standing. *Id*. at 888-889. The

18  Court found that plaintiff's complaint satisfied these requirements because he specifically alleged

19  that "(1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these

20  representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing

21  Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise." *Id*. at 327-28.

22  "Simply stated," the Court reasoned, "labels matter . . . the marketing industry is based on the

23  ───────────────

24          [2] The *Kwikset* Court explicitly noted that its analysis of injury-in-fact for standing purposes
      followed the meaning ascribed to that term in federal constitutional law. While the *Kwikset* case
25  was "pending on appeal, the [California] electorate enacted Proposition 64 (Gen. Elec.(Nov.2,
      2004)), which called into question [plaintiff's] standing to challenge Kwikset's country of origin
26  representations." *Kwikset*, 51 Cal. 4th at 316. The text of Proposition 64 expressly adopted the
      established federal meaning of the phrase "injury-in-fact," declaring "It is the intent of the California
27  voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition
      where they have no client who has been *injured in fact under the standing requirements of the*
      *United States Constitution.*" *Id.*, 51 Cal. 4th at 322 (quoting Prop.64, § 1, subd. (e)) (emphasis in
28  original). Absent binding authority to the contrary, the Court once again finds *Kwikset* persuasive.

United States District Court

For the Northern District of California

premise that labels matter, that consumers will choose one product over another similar product

based on its label and various tangible and intangible qualities they may come to associate with a

particular source." *Id*. at 328.  Where, as in *Kwikset*, a customer relies

> on the truth and accuracy of a label and is deceived by
> misrepresentations into making a purchase, the economic harm is the
> same: the consumer has purchased a product that he or she *paid more
> for* than he or she otherwise might have been willing to pay if the
> product had been labeled accurately.  This economic harm – the loss
> of real dollars from a consumer's pocket – is the same whether or not a
> court might objectively view the products as functionally equivalent.

*Kwikset*, 51 Cal. 4th at 329 (emphasis in original).  Thus, the Court held that "a consumer who relies

on a product label and challenges a misrepresentation contained therein can satisfy the standing

requirement . . . by alleging, as plaintiffs have here, that he or she would not have bought the

product but for the misrepresentation."  *Id*. at 330.

As in *Kwikset*, Ross alleges that Sioux Honey labeled its Sue Bee Clover Honey as "honey,"

that this representation was false as a matter of law under applicable sections of the Federal Food,

Drug, and Cosmetics Act, that consumers saw and relied on the product's label for its truth in

purchasing Sioux Honey's "honey," and that plaintiff and her proposed class members would not

have bought the "honey" had they known the product did not contain pollen.  As in *Brod*, Plaintiff's

allegations match precisely with the standard laid out by the *Kwikset* Court for establishing injury-

in-fact.  This Court held in *Brod* that "under *Kwikset*, California law recognizes an injury when a

product is mislabeled in violation of the law and consumers rely on that labeling in purchasing the

product or paying more than they otherwise would have.  That injury, defined and established by

California law, satisfies the injury-in-fact requirement of Article III."  *Brod v. Sioux Honey Ass'n

Co-op.*, 2012 WL 3987516 at \*6.  Following both *Kwikset* and *Brod*, this Court finds that Ross's

complaint satisfies the injury-in-fact requirement for standing under Article III.

      3.    <u>Sioux Honey's Objections</u>

As it did in *Brod*, Sioux Honey cites to a number of "benefit of the bargain" cases in support

of its argument that Plaintiff lacks Article III standing to sue, including *Rivera v. Wyeth-Ayerst

Laboratories*, 283 F.3d 315 (5th Cir. 2002).  In *Rivera*, the Fifth Circuit found that a group of

plaintiffs lacked standing to sue Wyeth for its role in distributing Duract, a non-steroidal

United States District Court

For the Northern District of California

anti-inflammatory drug prescribed for short-term management of acute pain, because they could demonstrate no concrete injury flowing from their use of the drug.  Plaintiffs had sued Wyeth on the theory that it had failed to adequately warn of the drug's dangers in violation of the Texas Deceptive Trade Practices Act, the implied warranty of merchantability, and common law unjust enrichment. *Rivera*, 283 F.3d at 317.  The *Rivera* court found that "[b]y plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that-the benefit of her bargain." *Id*. at 320.  Despite plaintiffs' claims to the contrary, "[h]ad Wyeth provided additional warnings or made Duract safer, the plaintiffs would be in the same position they occupy now," and as such "they cannot have a legally protected contract interest." *Id*.  Defendant also cites in support of its argument the following: *Medley v. Johnson & Johnson,* 2011 WL 159674 (D.N.J. Jan.18, 2011) (finding that plaintiffs lacked standing where the economic injury for which they sought redress was the price they paid for shampoo and no adverse health consequences were pled), *Young v. Johnson & Johnson*, 2012 WL 1372286 (D.N.J. Apr. 19, 2012) (finding that plaintiff's complaint amounts to no more than subjective allegations that the presence of any amount of trans fat and partially hydrogenated oils renders Defendant's product unhealthy, and, as such, is insufficient to establish injury-in-fact), *Boysen v. Walgreen Co.*, C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) (finding that plaintiff's complaint regarding defendant's alleged failure to disclose the presence of "material and significant" levels of arsenic and lead in its "100% Apple Juice" and "100% Grape Juice did not satisfy injury-in-fact standing requirements), and *Koronthaly v. L'Oreal USA, Inc*., 374 Fed. Appx. 257 (3rd Cir. 2010) (finding no standing to assert claims related to the presence of lead in lipstick at an amount exceeding that permitted in candy under federal law).

These cases are insufficient to render *Kwikset* inapposite.  With the exception of *Rivera*, each of these cases addresses an alleged failure to disclose the *presence* of a substance that made a product indiscernibly dissimilar from what a consumer thought they were purchasing.  Ross's complaint, in contrast, alleges that Sioux Honey failed to disclose the *absence* of a substance that allegedly "materially alters the essential composition of honey by eliminating many of honey's natural benefits," and that "affected the consumer acceptance and purchase price" of its product. TAC ¶¶ 23, 78.  In *Guerrero v. Target Corp.*, 12-21115-CIV, 2012 WL 3812324 (S.D. Fla. Sept. 4,

United States District Court

For the Northern District of California

2012), a Florida district court drew a similar distinction in an analogous honey labeling case.  That court distinguished *Medley v. Johnson & Johnson Consumer Cos.*, 2011 WL 159674, and rejected defendant's argument that plaintiff lacked standing, noting "[i]n the present case, the issue is not whether the honey Plaintiff purchased contained an unsafe substance, but rather that the honey lacked an ingredient, pollen, that Plaintiff contends is an essential element of honey under Florida law." *Id.*, 2012 WL 3812324 at *3.  Unlike *Medley*, *Boysen v. Walgreen Co.*, 2012 WL 2953069, and *Koronthaly v. L'Oreal USA, Inc*., 374 Fed. Appx. 257, the plaintiff in *Guerrero* "alleged that the honey she purchased did not contain the health benefits of pollen that she expected, was less valuable than honey that contained pollen and that she would not have purchased the honey if she knew it did not contain pollen," and thus "contends that the product she purchased was not what she expected." *Id.* at * 3 and Fn. 4.  Under those circumstances, the *Guerrero* court held that "Plaintiff has adequately plead an injury in fact." *Id.* at * 3.

Where, as here, the absence of a putatively valuable component is alleged to affect consumer acceptance and the price consumers are willing to pay, there is injury-in-fact sufficient to confer Article III standing.  In contrast, in *Riviera*, the Fifth Circuit found the plaintiffs received a product that performed the medical benefits they expected, and thus there was no allegation that consumers paid more for the product than they otherwise would have had the warning been disclosed.  *See Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d at 320 ("Duract worked.  Had Wyeth provided additional warnings or made Duract safer, the plaintiffs would be in the same position they occupy now.  Accordingly, they cannot have a legally protected contract interest.").

Finally, Sioux Honey asserts that Ross's complaint ought to be dismissed in light of this Court's decision in *Brod* because "[Sioux Honey] properly labeled its honey as honey and therefore there was no misrepresentation under federal law and the contrary California law was preempted." Def.'s Mot. to Dismiss at 6.  Defendant apparently argues that because Ross cannot prove her case in chief, neither can she show that she suffered an injury-in-fact, and therefore lacks standing under Article III.  Sioux Honey's argument misconstrues the scope of assessing constitutional standing.

For the purpose of evaluating Ross's standing to sue, it is enough that she alleges Sioux Honey had a duty to label Sue Bee Honey in a way that discloses the removal of pollen to potential

1  consumers.  Whether or not her claim properly construes controlling federal and state law to

2  demonstrate the existence of that duty on the merits will be examined *infra*, not here.  *See Flast v.*

3  *Cohen*, 392 U.S. 83, 99 (1968) ("The fundamental aspect of standing is that it focuses on the party

4  seeking to get his complaint before a federal court and not on the issues he wishes to have

5  adjudicated.  The 'gist of the question of standing' is whether the party seeking relief has 'alleged

6  such a personal stake in the outcome of the controversy as to assure that concrete adverseness which

7  sharpens the presentation of issues upon which the court so largely depends for illumination of

8  difficult constitutional questions.'") (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  Whether

9  Ross's complaint properly construes the FDCA and its regulations and whether Sioux Honey's

10  alleged conduct violated those provisions are merits question which cannot be conflated with the

11  inquiry into Plaintiff's Article III standing.  *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990)

12  ("It is well established, however, that *before a federal court can consider the merits of a legal claim*,

13  the person seeking to invoke the jurisdiction of the court must establish the requisite standing to

14  sue.") (emphasis added); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) (a court's threshold

15  inquiry into "standing in no way depends on the merits of the plaintiff's contention that particular

16  conduct is illegal").  Thus, the Court rejects Sioux Honey's invitation to dismiss Ross's complaint

17  on standing grounds.

18  B.      Federal Labeling Requirements

19          Sioux Honey's motion to dismiss next challenges Plaintiff's interpretation of controlling

20  federal labeling laws, and argues that because Sioux Honey complied with applicable federal law,

21  Plaintiff's five state law causes of action fail to state a viable claim.  This aspect of the Defendant's

22  motion is brought pursuant to Rule 12(b)(6).  The Court finds that, to the extent Plaintiff's state law

23  claims are premised on Sue Honey being mislabeled under federal law, those claims are legally

24  insufficient and must be dismissed as a matter of law.

25          1.      Legal Standard

26          Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead a claim with enough

27  specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

28  rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson,* 355 U.S.

41, 47 (1957)).  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

## 2.   Federal Food, Drug, and Cosmetic Act

The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et. seq*., establishes national uniform food labeling requirements, including those governing the labeling of honey.  Congress amended the FDCA in 1990 by enacting the Nutrition Labeling and Education Act ("NLEA"), whose stated purpose was, among other things, to "clarify and to strengthen [the FDA's] authority to require nutrition labeling on foods."  *National Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337).  As part of the NLEA, Congress added a preemption provision to the FDCA that expressly preempts state laws addressing certain subjects covered by the FDCA, including food labeling requirements.  *See* 21 U.S.C. § 343-1(a).  That section provides in relevant part as follows:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce –
>
> . . .

(3)     any requirement for the labeling of food of the type required by section . . . 343(i)...that is not identical to the requirement of such section.

21 U.S.C. § 343-1(a)(3).  Thus, when confronted with conflicting state labeling requirements, federal law controls how a food must be labeled.

Section 343 of the FDCA, codified at 21 U.S.C. § 343, provides that where federal law has prescribed a "standard of identity" to a food, the label affixed to that food must "bear[] the name of the food specified in the definition and standard, and, insofar as may be required by other regulations, the common names of optional ingredients . . ." 21 U.S.C. § 343(g).  Neither party asserts that honey is "a food for which a definition and standard of identity has been prescribed by regulations." 21 U.S.C. § 343(g).  *See* Def.'s Mot. to Dismiss at 2; TAC ¶ 35.

Where no "standard of identity" exists, the FDCA states that "a food shall be deemed to be misbranded . . . [u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient . . ." 21 U.S.C. § 343(I).  The Food and Drug Administration ("FDA"), which has responsibility under the FDCA to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A), has promulgated a number of regulations concerning food safety and labeling.  *See* 21 C.F.R. § 101.1, *et seq.*  These regulations include, in relevant part, the following provisions for discerning the "common or usual name" of a food:

(a) The common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients . . .

(b) The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case . . .

(c) The common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) and/or the need for the user to add any characterizing ingredient(s) or component(s) when the presence or absence of such

United States District Court
For the Northern District of California

ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food . . .

>(1) The presence or absence of a characterizing ingredient or component shall be declared by the words "containing (or contains) _____" or "containing (or contains) no _____" or "no _____" or "does not contain _____", with the blank being filled in with the common or usual name of the ingredient or component . . .

(d) A common or usual name of a food may be established by common usage or by establishment of a regulation in subpart B of this part, in part 104 of this chapter, in a standard of identity, or in other regulations in this chapter.

21 C.F.R. § 102.5.

The gravamen of Ross's complaint is that pollen is a "characterizing component" of honey. TAC ¶¶ 39-43.  However, the FDA's regulations do not define the term "characterizing component." Ross cites no authority denoting pollen as a "characterizing component" of honey.  *See* Pl.'s Opp. at 9-11.  As Sioux Honey points out in its motion papers, nor can Ross "cite a single state or federal statute or regulation, case authority, legal treatise, dictionary definition, food industry publication, or any other source for this proposition."  Def.'s Reply. Br. (Docket No. 54) at 8.  While Plaintiff's complaint includes numerous citations to scientific and medical publications that discuss the nutritional and economic benefits of bee pollen, *see* TAC ¶¶ 17-25, these citations do not, in themselves, demonstrate that pollen is a "characterizing component" of the product commonly known as "honey."  *See also* 21 C.F.R. § 102.5(d) ("A common or usual name of a food may be established by common usage . . .").

In *Brod*, this Court concluded that the "common or usual name" of Sue Bee Clover Honey was "honey," and that §343(i) of the FDCA required it to be labeled as such.  *Brod v. Sioux Honey Ass'n Co-op.*, 2012 WL 3987516 at * 12.  In reaching this conclusion, the Court noted that Sue Bee Honey met "the typical definition of honey found in dictionaries," despite the fact that it contained no pollen.  *Id.*, 2012 WL 3987516 at * 11-12.  This Court also considered a number of statutory definitions of honey compiled from "states throughout this nation," and found that "[n]one of these

United States District Court

For the Northern District of California

definitions require that honey contain non-filtered pollen." *Id*. at * 12.  Further, the Court took judicial notice of prior U.S. Department of Agriculture regulations that established varying grades of honey, and found that those regulations supported a finding that "the common or usual name for Sue Bee Clover Honey is 'honey.'" *Id*; *see* U.S. Department of Agriculture "United States Standards for Grades of Extracted Honey," 16 Fed. Reg. 2463 (March 16, 1951).  These former regulations established a voluntary grading metric for determining the quality of honey sold within the U.S. That metric assigned "Grade A," the highest grade, to honey that, among other things, achieved a clarity score of "not less than 90 points . . .," with clarity being scored based on a  honey's "degree of freedom from air bubbles, *pollen grains*, or fine particles of any material which might be suspended in the product." 16 Fed. Reg. 2465-66 (emphasis added).  Although the Department of Agriculture removed these standards from the Code of Federal Regulations on December 4, 1995, as part of a "National Performance Review program to eliminate unnecessary regulations and improve those that remain in force," *see* Removal of U.S. Grade Standards and Other Selected Regulations, 60 Fed. Reg. 62172-01 (December 4, 1995), the standards support a finding that, at least for much of the latter twentieth century, pollen was not considered a material or "characterizing component" of honey.  Plaintiff has cited no authority indicating that either the honey industry or American consumers of honey have deviated from that longstanding position.

Ross has not pled facts sufficient to make her interpretation of the applicable federal laws facially plausible.  She has not demonstrated that pollen is a "characterizing component" of honey such that its removal must be noted on an affixed label.  *See* 21 C.F.R. § 102.5(c).

Ross also alleges that Sue Honey ought to be considered "adulterated" under the FDCA because "Defendant removed a valuable constituent, pollen, from the Sue Bee Honey, which degraded the honey's quality." TAC ¶ 76, 95.  21 U.S.C. § 342(b)(1) declares that "[a] food shall be deemed to be adulterated" when "any valuable constituent has been in whole or in part omitted or abstracted therefrom."  As with Ross's claim that pollen is a "characterizing component" of honey, Plaintiff's complaint offers no legal support that pollen is considered a "valuable constituent" of honey under the FDCA.  Again, Plaintiff fails to meet the "facial plausibility" standard of *Iqbal* and *Twombly*.  *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949; *Bell Atl. Corp. v. Twombly*, 550 U.S. at 678.

**United States District Court**
For the Northern District of California

1   Plaintiff's claim based on federal law is dismissed with prejudice.

2   C.   <u>California Labeling Requirements</u>

3   In the alternative, Ross argues that provisions of the California Food and Agriculture code

4   require Sioux Honey to disclose that its Sue Bee Clover Honey is "pollen free."  Pl.'s Opp. (Docket

5   No. 53) at 6; *see also id.* at 5 ("Defendant's arguments, however, are erroneous because: (1)

6   California is free to regulate disclosures regarding the absence of pollen from honey, as this Court

7   has recognized . . . (4) the California Honey Standard and relevant California statues are identical to

8   or consistent with 21 U.S.C. § 102.5(c), which requires Sue Bee Honey to be labeled as 'Honey –

9   No Pollen,' and not simply 'honey.'").

10   In *Brod*, this Court held that the California Food and Agriculture code provisions relied on

11   by Ross were preempted by the FDCA to the extent that they required Sue Bee Clover Honey to be

12   sold as something other than 'honey' in California.  *See Brod v. Sioux Honey Ass'n Co-op.*, 2012

13   WL 3987516 at * 10 ("The Court thus concludes that the California laws invoked by Plaintiff in his

14   complaint impose a labeling requirement that squarely conflicts with federal labeling law.  It is

15   therefore preempted.").  The Court explicitly noted that its

16       finding of preemption does not imply that California is powerless to
     act in this arena.  For instance, if California required disclosure on its
17       labels that the honey was e.g., "filtered" or "pollen free," that would
     appear not to conflict expressly with § 343(i).  California simply
18       cannot under § 343(i) ban the use of the label "honey" for products
     which are commonly and usually called honey.

19

20   *Brod v. Sioux Honey*, 2012 WL 3987516 at * 9.

21   Ross attempts to pick up where *Brod* left off, and argues that these very same provisions of

22   California's Food and Agriculture Code require the sort of disclosure contemplated by the Court.

23   However, simply because California may be able to prescribe a supplementary label requirement

24   such as "filtered" or "pollen free" does not mean that California has done so.  The text of the code

25   provisions Ross relies on to establish such a requirement does not support her assertion.

26   Section 29413(e) of the California Food and Agriculture Code provides:

27       Honey sold as described in subdivision (d) shall not have added to it
     any food ingredient, including food additives, nor shall any other
28       additions be made other than honey.  Honey shall not have any

17

**United States District Court**
For the Northern District of California

> objectionable matter, flavor, aroma, or taint absorbed from foreign matter during its processing and storage. Honey shall not have begun to ferment or effervesce *and no pollen or constituent particular to honey may be removed* except where unavoidable in the removal of foreign inorganic or organic matter.

Cal. Food & Agric. Code § 29413(e) (emphasis added).  Section 29671 in turn provides "it is unlawful for any person to . . . sell any honey, adulterated honey or any product which is marked, labeled, or designated as honey, *which does not conform to the provisions of this chapter*."  Cal. Food & Agric. Code § 29617 (emphasis added).  Additionally, § 29673 makes it "unlawful for any person to *mislabel* any container or subcontainer of honey or place any false or misleading statement on any wrapper, label, or lining of any container of honey, or on any placard which is used in connection with or which has reference to any honey."  Cal. Food & Agric. Code § 29673 (emphasis added).

     As this Court noted in *Brod*, these provisions, by their terms, require that any product labeled as honey *must* contain pollen to be lawfully sold in California.  *Brod v. Sioux Honey*, 2012 WL 3987516 at * 9-10.  While the law appears to prohibit the sale of such honey, it does not purport to impose a labeling requirement when such honey is sold.[3]  California law does not, as Plaintiff suggests, require Sioux Honey "to disclose that the Sue Bee Honey is pollen-free – in an area of its label other than where the common or ususal name appears . . ."  Pl.'s Opp at 6.  The California Legislature has been quite clear in declaring when honey products require additional labeling and disclosures.  Since at least 1967, California has imposed a labeling requirement on honey merchants to disclose when honey sold in the state has been imported from a foreign country.  *See* Cal. Food & Agric. Code § 29643 ("Every container and subcontainer of imported honey shall be labeled with the name of the territory or foreign country from which it is imported . . .").  Similarly, California law directs honey merchants to "conspicuously mark" each container of honey with "[o]ne of the United States grades which are established for honey by the United States Department of Agriculture."  Cal. Food & Agric. Code § 29611(c).  Indeed, the very same section of the Food and Agricultural Code requires merchants to disclose the *addition* of pollen.  *See id* § 29611(c) ("This

---

[3] Plaintiff does not seek to enjoin the sale of Sue Bee Honey in California under § 29413(e).

United States District Court

For the Northern District of California

subdivision does not, however, apply to honey to which pollen has been added, if the amount of pollen added is visible and each such container is plainly and conspicuously labeled with the words 'pollen added.'").

Plaintiff's argument that § 29413(e) implicitly requires merchants to disclose the *removal* of pollen from honey is neither supported by the text of statute, nor is it in harmony with the many explicit disclosure requirements found in California's statutory scheme addressing honey production, manufacture, and sale. Nor can Ross cite to a single case or administrative decision that construes § 29413(e) in the manner advanced by Plaintiff.

While § 29673 makes it unlawful to "mislabel" any container of honey, this Court has already held that federal law requires that Sue Bee Honey be labeled as "honey," its common name, regardless of its pollen content. Moreover, as noted above, California law (Food & Agric. Code § 29611(c)) requires that honey be marked with one of the U.S. grades; in this case Sue Bee Honey is marked "Grade A," defined by former federal regulations as honey from which pollen has been filtered. Plaintiff has failed to demonstrate how Sue Bee Honey, the labeling of which complies with federal law and § 29611(a), can be deemed "mislabeled" under § 29673.

D.   State Law Claims

Plaintiff confirmed at oral argument that her amended complaint advances two claims that are not premised on, or derived from, a finding that Sioux Honey violated federal or state labeling requirements. *See* Hearing Trans. at 11:19-22. First, Ross argues that, independent of federal and state labeling requirements, Sioux Honey's act of removing all naturally-occurring pollen from Sue Bee Honey constituted unlawful "adulteration" under California's Sherman Food, Drug, and Cosmetic Law ("Sherman Act"), Cal. Health & Safety Code § 109875, *et. seq*. *See* TAC ¶¶ 77, 96. Second, Plaintiff argues that Sioux Honey's failure to disclose the fact that all pollen had been removed from a product denominated as 'Honey' amounted to a misrepresentation as to the product's "quality, characteristics, and/or ingredients," also in violation of the Sherman Act. *See* TAC ¶¶ 73, 104.

1.   <u>Adulteration</u>

Section 110585 of the Sherman Act declares a food to be adulterated "if any valuable constituent has been in whole or in part omitted or abstracted therefrom" or "if damage or inferiority has been concealed in any manner."  *See* Cal. Health & Safety Code § 110585(a) and (c).  Section 110620 makes it "unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is adulterated."  Ross argues that Sioux Honey 'adulterated' Sue Bee Honey when "a valuable constituent, pollen, was removed from the Sue Bee Honey, which degraded the honey's quality."  TAC ¶ 76.  The Sherman Act does not further define 'adulteration' or 'valuable constituent.'[4]  Nor does Cal. Penal Code § 383, a parallel provision from 1905 that also criminalizes the adulteration of food, shed any light on how these terms are to be interpreted.  *See* Cal. Penal Code § 383(b)(3) (stating that adulteration of food occurs when "any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it").  Indeed, counsel for both parties admitted at the hearing on this matter that they have been unable to locate any case, regulation, or other material construing these seemingly crucial terms of § 110585.  *See* Hearing Trans. 6:9-14,17:25-18:18.

Ross's amended complaint avers that Sioux Honey is ultimately liable to Plaintiff and her putative class for 'adulterating' Sue Bee Honey under the remedies provisions of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et. seq.*, and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq.  See* TAC ¶¶ 67-100.  The CLRA makes unlawful the act of "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," Cal. Civ. Code § 1770(a)(7), as well as "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." *Id.* §1770(a)(5).

---

[4]  The lack of an established or accepted definition of "valuable constituent" is particularly troubling because "[t]he word 'valuable' is a relative term susceptible of many interpretations and of no definite or absolute meaning.  That which is considered valuable by one court or jury might not be considered so by another."  *U. S. v. Fabro, Inc.*, 206 F. Supp. 523, 526 (M.D. Ga. 1962).

United States District Court

For the Northern District of California

1    The UCL prohibits any "unlawful, unfair[,] or fraudulent business act or practice," including

2    engaging in "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

3    Under the UCL, "unfair" business practices exist when (1) the harm to the consumer outweighs the

4    utility of a practice to the defendant, or (2) when a business practice violates public policy as

5    declared by "specific constitutional statutory or regulatory provisions." *Rubio v. Capital One Bank*,

6    613 F.3d 1195, 1205 (9th Cir. 2010) (citing *Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d 718,

7    735 (9th Cir. 2007) and *Gregory v. Albertson's, Inc*., 104 Cal. App. 4th 845, 854 (2002)).  "The

8    UCL's scope is broad.  By defining unfair competition to include any *unlawful* business act or

9    practice, the UCL permits violations of other laws to be treated as unfair competition that is

10   independently actionable."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002) (emphasis in original)

11   (citations and internal quotation marks omitted).

12       The Ninth Circuit has held that, in the context of a false or misleading advertising claim,

13   "these California statutes are governed by the 'reasonable consumer' test." *Williams v. Gerber*

14   *Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  *See also Freeman v. Time, Inc.,* 68 F.3d 285, 289

15   (9th Cir.1995) (under the UCL, a "false or misleading advertising and unfair business practices

16   claim must be evaluated from the vantage of a reasonable consumer") (citation omitted).  To be sure,

17   a claim that a product has been unlawfully adulterated is not synonymous with a claim that a product

18   was advertised or marketed in a false or misleading manner.  However, as discussed *infra*, this Court

19   finds that the "reasonable consumer" standard is nonetheless the appropriate standard for

20   determining what constitutes a "valuable constituent" under the Sherman Act, and, by extension,

21   whether its removal amounts to "adulteration."

22       American law is replete with references to "the archetypal reasonable person."  *Ford Dealers*

23   *Assn. v. Dep't of Motor Vehicles*, 32 Cal. 3d 347, 369 (1982).  A number of areas of law resolve

24   linguistic ambiguity with reference to the standards and practices of the "average citizen."  *See e.g.*

25   *Miller v. California*, 413 U.S. 15, 24 (1973) (defining 'obscenity' as "whether 'the average person,

26   applying contemporary community standards' would find that [a] work, taken as a whole, appeals to

27   the prurient interest") (citations omitted); *Cf. People v. Newble*, 120 Cal. App. 3d 444, 452 (Cal. Ct.

28   App. 1981) (procedural due process requires a criminal statute to be "so definite and certain that it

United States District Court

For the Northern District of California

gives fair warning, not necessarily with mathematical exactitude, but sufficient to inform a person of ordinary or average intelligence, of what acts or omissions it declares to be prohibited and punishable").  Tort law in this and many other states invokes the "standard of a 'reasonable prudent person under the circumstances' [as] the general standard of care" to which citizens are expected to adhere in carrying out their duties to one another.  *Kentucky Fried Chicken of Cal., Inc. v. Superior Court*, 14 Cal. 4th 814, 824 (1997).  Indeed, the "reasonable person" of American law is no less than "a personification of a community ideal of reasonable behavior."  Prosser & Keeton on Torts, § 32 at p. 175 (5th ed. 1984).  Closer to the case at bar, the 'reasonable person' standard "is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought.  It is the standard for false advertising and unfair competition under the Lanham Act, for securities fraud, for deceit and misrepresentation and for common law unfair competition."  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quoting *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1398 (E.D. Cal. 1994)).  The standard is also employed in various California food and product safety laws.  *See Mexicali Rose v. Superior Court*, 1 Cal. 4th 617, 633 (1992) (where the California Supreme Court expressly adopted a "reasonable expectation of the consumer" test for determining when a restaurateur is liable in tort for injuries caused by harmful substances in food);[5] *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 567 (1994) (reasonable consumer test used in certain product liability cases "in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions") (emphasis in original).

The Sherman Act does not set out an explicit rule or test for judging what constitutes a "valuable constituent" of a food such that its removal would amount to "adulteration" under California law.  However, neither does it contain language that "expressly departs from the

---

[5]  The *Mexicali Rose* Court held, in part, that "in deciding the liability of a restaurateur for injuries caused by harmful substances in food, the proper test[] to be used by the trier of fact" is as follows:

> If the injury-causing substance is foreign to the food served, then the injured patron may also state a cause of action in implied warranty and strict liability, and the trier of fact will determine whether the substance (i) could be *reasonably expected by the average consumer* and (ii) rendered the food unfit or defective.

*Mexicali Rose v. Superior Court*, 1 Cal. 4th at 633 (emphasis added).

'reasonable person' standard so well rooted in the law." *Haskell v. Time, Inc.*, 857 F. Supp. at 1398. This Court will not infer a departure from such a widely accepted standard in the absence of express language indicating that something other than the viewpoint of an ordinary or average consumer should inform what qualifies as a "valuable constituent" under the Act. *Cf. Haskell v. Time, Inc.*, 857 F. Supp. at 1398 ("In the absence of language indicating that the statute does depart, the court will not infer such a departure" from "the reasonable person standard."). As with the concept of negligence in tort law, statutory terms like "adulteration" and "valuable constituent" in the Act should be construed in light of a "uniform standard" that is "external" and "objective," rather than one based on "the individual judgment, good or bad," of a particular consumer, "and it must be, so far as possible, the same for all persons, since the law can have no favorites." Prosser & Keeton on Torts, § 32 at p. 173-74. Therefore, the Court adopts the "reasonable person" or "reasonable consumer" test for determining when a food has been "adulterated" through the removal of a "valuable constituent" under the Sherman Act.[6]

The "reasonable consumer" standard adopts the perspective of the "ordinary consumer acting reasonably under the circumstances." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 512 (2003). The reasonable consumer need not be "exceptionally acute and sophisticated." *Donaldson v. Read Magazine*, 333 U.S. 178, 189 (1948); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th at 509. Rather, questions of judgment calling for the perspective of a reasonable consumer are "determined in the light of the effect [such a question] would most probably produce on ordinary minds." *Donaldson v. Read Magazine*, 333 U.S. at 189.

Under the reasonable consumer standard, Plaintiff has not pled sufficient facts to establish that pollen is a valuable constituent of honey. Her amended complaint fails to allege any factual support for her belief that an ordinary consumer would consider pollen to be a constituent of honey, let alone a "valuable constituent." As with her assertion that pollen should be considered a "characterizing component" of honey under the FDA's FDCA regulations, Ross cannot cite a single source stating that ordinary consumers consider pollen to be the "heart and soul of honey." Hearing

_____
[6] Plaintiff has also proposed adoption of a "reasonable consumer" standard for assessing whether pollen constitutes a "valuable constituent" of honey. *See* Hearing Trans. 6:13-14.

United States District Court

For the Northern District of California

1    Trans. 8:17-21.  To be sure, the amended complaint cites numerous scientific and medical

2    publications that discuss the nutritional and economic benefits of bee pollen.  *See* TAC ¶¶ 17-25.  It

3    is certainly not implausible that a particularly sophisticated consumer might consider pollen to be a

4    valuable constituent of honey.  But this does not establish that the *reasonable* consumer would

5    expect honey to contain pollen.  Plaintiff's amended complaint is silent on this except for threadbare

6    conclusory recitals that state the "absence of pollen from honey is material to consumer acceptance."

7    TAC ¶ 18.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

8    statements," however, "do not suffice" to state a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. at 678.

9          Indeed, this Court has previously catalogued a number of state statutes and dictionary

10   definitions of "honey," and noted that *none* identify pollen as a constituent.  *See Brod v. Sioux*

11   *Honey Ass'n Co-op.*, 2012 WL 3987516 at * 11-12.  California's own statutory definition of honey

12   omits any reference to pollen, and has done so since at least 1967.  *See* Cal. Food & Ag. Code §

13   29413(a).[7]  In fact, as noted above, California's honey statutes specifically require merchants to

14   disclose when pollen is *added* to honey.  *See* Cal. Food & Ag. Code § 29611(c).  There is no parallel

15   labeling provision regulating the *removal* of pollen.  And the fact that the Department of

16   Agriculture's "United States Standards for Grades of Extracted Honey" assigned "Grade A" to

17   honey characterized by its "freedom from air bubbles, *pollen grains*, or fine particles of any material

18   which might be suspended in the product" for much of the latter twentieth century, combined with

19   the statutory and dictionary definitions referenced above, strongly suggests that pollen is not, in the

20   _____

21        [7]  California currently defines "honey" as "the natural sweet substance produced by
     honeybees from the nectar of plants or from secretions of living parts of plants or excretions of plant
22   sucking insects on the living parts of plants, which the bees collect, transform by combining with
     specific substances of their own, deposit, dehydrate, store, and leave in the honeycomb to ripen and
23   mature."  Cal. Food & Agric. Code § 29413(a).  Prior to its amendment in 2009, the statutory
     definition of "honey" was as follows:

24               "Honey" means the nectar of floral exudations of plants gathered and
                 stored in the comb by honeybees.  It is a levorotatory, contains not
25               more than 20 percent of water, not more than 25 one hundredths of 1
                 percent of ash, not more than 8 percent of sucrose, its specific gravity
26               is not less than 1.412, its weight not less than 11 pounds, 12 ounces
                 per standard gallon of 231 cubic inches at 68 degrees Fahrenheit.
27

28   Cal. Food & Agric. Code § 29413 (amended by Stats. 2009, c. 388 (A.B.1216), § 1).  Neither
     definition makes any reference to pollen.

1   mind of the ordinary consumer, a "valuable constituent" of honey.  *See* 16 Fed. Reg.  2465-66

2   (emphasis added).

3       2.   Misleading

4       Ross argues that Sioux Honey's failure to disclose the fact that all pollen has been removed

5   from a product denominated as "honey" amounts to a misrepresentation as to the product's "quality,

6   characteristics, and/or ingredients," irrespective of state and federal labeling requirements.  *See* TAC

7   ¶¶ 73, 104.  Plaintiff alleges that Sioux Honey's nondisclosure of this fact subjects it to liability

8   under the CLRA, the UCL, and California's False Advertising Law ("FAL"), Cal. Bus. & Prof.

9   Code § 17500, *et. seq.*[8]  As a group, "these laws prohibit 'not only advertising which is false, but

10  also advertising which[,] although true, is either actually misleading or which has a capacity,

11  likelihood or tendency to deceive or confuse the public.'"  *Kasky v. Nike, Inc.*, 27 Cal. 4th at 951

12  (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)).  In order to establish liability under these

13  statutes, the omission or affirmative misrepresentation contained within an allegedly misleading

14  advertisement must be "material" to a customer's evaluation of a product.  *See In re Tobacco II*

15  *Cases*, 46 Cal. 4th 298, 326-27 (2009) ("It is not necessary that the plaintiff's reliance upon the truth

16  of the fraudulent misrepresentation be the sole or even the predominant or decisive factor

17  influencing his conduct.  It is enough that the representation has played a substantial part, and so had

18  been a substantial factor, in influencing his decision.") (internal quotation marks and citations

19  omitted); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 Fn. 2 (9th Cir. 2001) (materiality is a

20  required element of fraud claims based on affirmative misrepresentation and omission).  "A

21  misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its

22  existence or nonexistence in determining his choice of action in the transaction in question.'"  *In re*

23  _____

24      [8]  A similar claim could be advanced under § 110660 of the Sherman Act.  That section states
    that "[a]ny food is misbranded if its labeling is false or misleading in any particular."  Cal. Health &
25  Safety Code § 110660.  Section 110770 of the Act prohibits the "misbranding" of food, stating that
    "[i]t is unlawful for any person to receive in commerce any food that is misbranded or to deliver or
26  proffer for delivery any such food."  *Id.* § 110770.  At the hearing on this motion, Plaintiff's counsel
    stated that her "nondisclosure" claim was a "standalone claim[] . . . not necessarily predicated on the
27  Sherman law or the California Agricultural Code."  Hearing Trans. 10:1-4.  Even if Plaintiff had
    advanced her nondisclosure claim under § 110660, the fact that she failed to plead any facts
28  supporting her contention that the absence of pollen in Sue Bee Honey was "material" to the
    ordinary consumer would warrant dismissal under Rule 12(b)(6).

United States District Court

For the Northern District of California

1   *Tobacco II Cases*, 46 Cal. 4th 298 at 327 (quoting *Engalla v. Permanente Medical Group, Inc.* 15

2   Cal. 4th 951, 976–977 (1997)) (internal citations omitted).

3          California courts have expressly adopted the "reasonable consumer" standard for

4   adjudicating misrepresentation claims advanced under the CLRA, UCL, and FAL. *See Williams v.*

5   *Gerber Products Co.*, 552 F.3d at 938 ("Appellants' claims under these California statutes are

6   governed by the 'reasonable consumer' test."). "Under the reasonable consumer standard,

7   Appellants must show that members of the public are likely to be deceived." *Id.* (quoting *Freeman*

8   *v. Time, Inc.*, 68 F.3d at 289, and *Bank of West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)).

9   For the reasons already discussed, Plaintiff has failed to allege facts giving "facial plausibility" to

10  her claim that pollen (and its removal from honey) is of material concern to the ordinary consumer.

11  The amended complaint provides no indication that the presence or absence of pollen "play[s] a

12  substantial part" in the reasonable consumer's decision to purchase honey. *In re Tobacco II Cases*,

13  46 Cal. 4th 298 at 326. Rather, the record before the Court suggests a "jury could not reasonably

14  find that a reasonable man would have been influenced by" the failure to disclose the filtration of

15  pollen. *Id.* at 327. As such, Plaintiff's CLRA, UCL, and FAL causes of action premised on

16  nondisclosure of a material fact do not state a viable claim under Rule 12(b)(6).[9]

_____

17          [9] Plaintiff's counsel noted at the hearing that Judge Brick of the Alameda County Superior
    Court recently overruled a demurrer dismissing similar claims in *Strobridge v. Safeway, Inc.*, RG-
18  12-611078 (Super. Ct., Alameda Cty.). Judge Brick's tentative ruling, which Plaintiff's counsel
    provided to this Court, states the following:
19

20                  Plaintiffs allege that they would not have bought or would not have
                    paid as much for the Safeway Honey had they known that pollen had
21                  been removed. Their theory thus appears to be that the presence of
                    pollen is so important to them and other purchasers of honey that its
22                  removal without disclosure is unlawful, unfair, deceptive and
                    fraudulent, as well as a breach of an implied contract. Because the
23                  Court must accept as true for purposes of this demurrer Plaintiffs'
                    well-pleaded factual allegations and the Court cannot say as a matter
24                  of law that none of Plaintiffs' claims are properly stated, the demurrer
                    must be OVERRULED.

25  Under California law, "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question
    of fact which requires consideration and weighing of evidence from both sides and which usually
26  cannot be made on demurrer." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115,
    134-35 (2007) (citation and internal quotation marks omitted). However, in federal civil practice
27  "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is
    inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. at 678. As noted above, threadbare
28  recitals of the elements of a cause of action, supported by mere conclusory statements, such as

3.      Common Law Unjust Enrichment and Breach of Implied Contract

Ross advances two additional common law claims in her amended complaint; the first is premised on the doctrine of unjust enrichment or restitution, and the second on breach of implied contract.  *See* TAC ¶¶ 109-125.  Regarding first claim, "California courts appear to be split as to whether there is an independent cause of action for unjust enrichment."  *Clerkin v. MyLife.com, Inc.*, C 11-00527 CW, 2011 WL 3607496 at * 8 (N.D. Cal. Aug. 16, 2011).  "To the extent a claim for unjust enrichment is available, it generally requires proof of 'receipt of a benefit and unjust retention of the benefit at the expense of another.'"  *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1014 (C.D. Cal. 2011) (quoting *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, C 09-1597 CW, 2010 WL 3448531 at * 13 (N.D. Cal. Sept. 1, 2010).  As with her other claims, Plaintiff has not pled sufficient factual matter to establish the facial plausibility of her allegation that Defendant made "material misrepresentations and omissions of material fact" by its failure to disclose that all pollen had been removed from Sue Bee Honey.  TAC ¶ 114.  Absent such, the Court does not discern any viable claim for unjust enrichment.

On Plaintiff's second common law claim for breach of implied contract, the Court finds that Ross's complaint fails to adequately plead the required elements of the implied contract that allegedly existed between Sioux Honey and purchasers of Sue Bee Clover Honey.  Under California law, "a cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct."  *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).  Section 1621 of the California Civil Code defines "an implied contract" as a contract where "the existence and terms of which are manifested by conduct."  Cal. Civ. Code § 1621.  The amended complaint does not include any specific allegations suggesting that the conduct of the parties here manifested an intent to create a contract, nor what the terms of that contract might be.  Rather, it simply states that "Plaintiff and other similarly situated Class members conferred upon Defendant benefits that were non-gratuitous . . .", and that "Defendant accepted or retained the benefits

Ross's assertions concerning the materiality of pollen to ordinary consumers, do not suffice to state a plausible claim in federal court under *Ashcroft v. Iqbal*, 556 U.S. at 678.

**United States District Court**
For the Northern District of California

conferred by Plaintiff and other similarly situated Class members despite Defendant's knowledge of its material misrepresentations and omissions of material fact." TAC ¶¶ 122-123. It does not describe the "bargained-for exchange" at the core of the implied contract, nor does it illuminate any contractual terms. To the extent Plaintiff asserts that Defendant contracted for the sale and purchase of Sue Bee Honey between consumers and Sioux Honey, and that their sale contract contained an implied term that the honey contain pollen, for the reasons stated above why there is no viable claim of mislabeling or adulteration, no such term may reasonably be implied by contract here. As such, Plaintiff's breach of implied contract claim fails to state a viable cause of action against Defendant under Rule 12(b)(6).

### IV.    CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** Sioux Honey's motion to dismiss. While Plaintiff has standing to assert her claims under Article III, she has not shown that Sioux Honey has a duty under federal or state law to disclose to purchasers of Sue Bee Honey that all naturally occurring pollen has been removed from the product. Nor has Plaintiff alleged sufficient facts to support her state law claims that Defendant's nondisclosure exposes it to liability under the statutory and common law causes of action advanced in the amended complaint. This dismissal is with prejudice. The Court concludes that any further amendment to the complaint would be futile. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.


Dated:  January 14, 2013

_____
EDWARD M. CHEN
United States District Judge